## WEIR v. HOSS & WIFE.

1. A bill of exceptions may be suppressed, when it is shown that it was fraudulently or surreptitiously obtained; but the Supreme court cannot try the facts and determine what was the point reserved at the trial, nor can any admission made by the judge afterwards, affect the validity of the bill.

2. A publication, the tendency of which is to expose the party to ridicule, contempt and disgrace, is, if maliciously or wantonly done, a libel.

3. The office of the *innuendo* is to explain the allusions to the party intended to be libelled, and if the allusions cannot be rendered certain without other matter, it must be placed on the record, by reference to which, the words complained of, become actionable. Its office is to explain—it does not introduce new matter.

4. When the *innuendo* explains the meaning of personal pronouns, the truth of the explanation is to be ascertained by the context.

5. When the libel had spoken of the plaintiff as the "Filly horse," and *innuendo* that the plaintiff's wife was meant, held to be correct—her name being *Hoss.*

6. It is not necessary to set out the entire publication charged as being libellous; unless, by the omission of some portions, a new arrangement is produced, and the sense altered. The proper mode is to show that the selected parts are extracts; and if the part omitted explains it, or renders it harmless, the defendant may have the benefit of it on the general issue.

7. When the plaintiff does not undertake to set out the libel in *hæc verba,* or ac-

111

'cording to its tenor, the omission or alteration of a letter, which does not alter the meaning, will not be a variance.

8. When copies of a libel are offered in evidence, instead of the original, which are stated in the record to be *substantial* copies of the original, if the copies are not set out in the record, this court will presume, after verdict, that the variance between the copies and the original, was immaterial

9. To constitute a libel, it must be published as well as written, and if copies of the writing are taken without the consent of the author, the offence is not complete.

Error to the Circuit Court of Cherokee.

The action was by the defendants against the plaintiff in error for a libel.

The first count of the declaration charges, that the plaintiffs were tavern keepers in the town of Jefferson, and liberally patronized as such, and that the libel was published to injure their good character, &c., and to cause persons who patronized their tavern to withdraw their patronage, &c., the defendant himself being a tavern keeper in the same town; that "he published of and concerning Sarah Hoss, wife of said Jacob, a certain false, scandalous and defamatory libel, containing among other things too vulgar and obscene to be mentioned, the false, scandalous, malicious and defamatory matter following, of and concerning the said Sarah:

"She, (meaning the said Sarah), I am told, visits Mrs. Burnett's, alias Haden—decent company for decent folks, if, but as some folks say, they soot very well. I (meaning the defendant) think so—such lady ought to establish a hore house. They (meaning Mrs. Burnett and the said Sarah Hoss) would make good street hores. Oh, delightful woman!" * * *

The second count, omitting the statement of an intention to injure the plaintiffs as tavern keepers, charges the libel thus: "To the public, and more especially the ladys, know, as it is well known, that Mrs. Hoss (meaning the plaintiff Sarah) is getting along in the world; as concerns talking about her neighbors, and more especially those she should not, for whenever sutch folks getting to spinning street yarn, they should look at home first, and see if they have all things clean in the first place. I (meaning the writer) do not like to hear of ladys who wish to be fine and decent in this place—they should not befriend such a man

as J S. Burnett, who has taken other men's wives. I understand she (meaning the plaintiff Sarah) says he (meaning the said J. S. Burnett) has done write. It is very likely he has done well, but married folks should not hold up for them."　＊　＊　＊

After re-stating the libellous matter in the first count, it proceeds: "If the old horse (meaning the plaintiff, who was then absent from home,) does not come home soon, they (meaning the said Sarah and others) will have to crisen that little J. S. Burnett, (meaning and insinuating thereby, that the child of the said Sarah, then lately born, was illegitimate, and was the child of the said John S. Burnett.)　＊　＊　＊　＊　In the first place, ladys should keep their tongues, then down with their petticoats, and pin them down; but she (meaning the plaintiff Sarah) lets hers fly up.　＊　＊　＊　＊　＊

I had a notion of establishing a printing office here; but it would be useless, for aunt T. and filly horse (meaning by aunt T., Mrs. Tennessee Leach, the sister of plaintiff Sarah, and by filly horse, the plaintiff Sarah,) would take all the bizness, and it would be a bad bizness for me.　＊　＊　＊　＊　＊　＊

Now, young ladys, you had better leave off going there; for if you do not, you will get a bad name, and then as to marrying, it will be a bad chance," (meaning that young ladies should desist from visiting the tavern house, and residence of the plaintiffs, for fear of losing their reputation,) &c. &c.

The defendants demurred to the declaration, and the court overruled the demurrer.

Upon the trial, under the general issue, it appears from the bill of exceptions, that the plaintiffs proved the loss of the original libel; and then proved three copies of it; each of which was proved to be a substantial copy of the original libel; and all of which differed from each other in some respects, and offered the said copies in evidence. To the introduction of each of said copies in evidence, the defendant objected. The objections were overruled, and all of said copies read to the jury; and defendant excepted.

The court charged the jury, that if they were satisfied from the proof, that either of the copies of the libel offered in evidence, was substantially a copy of the original libel, and that it was either composed, or published, by defendant, they ought to find for the plaintiffs; to which the defendant excepted.

The assignments of error bring to view the sufficiency of the declaration, and the propriety of the charge of the court, and the sufficiency of the evidence.

RICE, for plaintiff in error. *The words charged do not* amount to a libel; they may show an intent to calumniate Mrs. Hoss, but are not libellous. No charge is fixed upon Sarah Hoss. "Mrs. Hoss" does not necessarily mean *Sarah Hoss.* [16 Wendell, 16, 19; 6 Am. Com. L. C. 432.]

That which is termed a libel in this case, does not necessarily impute one to the plaintiff, unless connected with other facts by way of inducement, which is not done in this case. [13 Eng. C. L. 128.]

The *innuendo's* in this case, do not merely explain the meaning of the alleged libel: they add to it, and are unaided by the proper averments in the declaration, and are, therefore, bad. [5 Johns. 211, 431, 9; 8 East, 427; 1 Chitty's Pl. 383.]

A cause of action is stated in the declaration, for which the husband alone ought to sue. [2 Com. Dig. 248; 18 Johns· 443; 1 Chitty's Pl. 63, 49, 50, and note; 2 Saunders' P. & Ev. 568.]

The words of the libel should have been stated on the record: it is not sufficient to set out its substance. The term, "matter," employed in the declaration, is not synonymous with words. [1 Raymond, 414; 1 S. & L. 347; 6 Term, 162; 4 Ala. 44.] The whole of the libel should have been set out, and not a part only.

The verdict and judgment being general, if either count is bad, the judgment will be reversed on error, although a general demurrer will not be sustained to both counts. The plaintiff should have taken his judgment on the good count.

WALKER, WM. CHILTON and WHITE, *contra,* cited 5 Modern, 163; 2 Salk. 417; 3 Littell, 389; 1 Binney, 393; 2 Carr. & P. 46.]

ORMOND, J.—Previous to entering upon the decision of the questions presented by the assignment of errors, it is necessary to determine whether the bill of exceptions is to be considered a part of the record. From a statement of the judge who tried the cause, appended to the bill, it appears that it was not sealed at the term of the court at which the cause was tried, and not until more than a year afterwards. He explains why the bill was not sealed

during the term, and the causes which led to further delay, which proceeded principally from the disagreement of counsel as to the points reserved, and the sudden departure of the judge from one of the courts, at which it was expected to be made out.

It is firmly fixed in our practice, that a bill of exceptions may be sealed by the judge before whom it was reserved, after the adjournment of court, if the facts remain in his recollection so that he can, without danger of mistake, certify the point reserved; [Strader, Perine & Co. v. Alexander, 9 Porter, 441;] and that the bill, when so sealed, becomes a part of the record. [Poole v. The Cahawba Railroad Company, 5 Ala. 241.]

A number of affidavits, and a letter from the presiding judge to one of the counsel, have been produced, and a motion made to suppress the deposition. The affidavits certainly tend to establish, that the bill of exceptions does not correctly state the points reserved on the trial, or at least to render it a matter of doubt, which is strengthened by the letter of the judge admitting that he did not recollect the facts very distinctly, and that he relied upon the statements of the defendant's counsel; but we are clear in the opinion, that this is not sufficient to authorize the suppression of the deposition. We cannot try the facts, and determine what was the point reserved at the trial; that can only be ascertained by the court before which the point was reserved. In this case, the judge has certified the bill of exceptions: it is a part of the record, and can no more be impugned by extrinsic proof than any other part of the record.

In The Bank at Decatur v. Kinsey. [5 Ala. 9,] we held, that this court could suppress a bill of exceptions fraudulently or surreptiously obtained; but that is not this case. There is no pretence that the judge did not sign this bill of exceptions, with full knowledge of its contents. If, from the loss of his notes of the trial, or from any other cause, the facts, as they transpired at the trial, had faded from his memory, or had become so indistinct that he could not recollect with certainty what took place, and the counsel on both sides could not agree upon the exception, he should have refused to sign it. Having signed it, no subsequent admission by him can impair its validity.

The practice of signing bills of exceptions after the adjournment of court, ought to be discouraged as much as possible; and when submitted to from the necessity of the case, ought certainly,

if practicable, always be shown previously to the opposing counsel.

Upon the merits, we are very clear in the opinion that the publication complained of, is libellous. The inevitable tendency of such an indecent and shameful publication, was to cover the party libelled with ridicule, contempt, and disgrace; and to cause her to be shunned and avoided by the society in which she lived. This, if published wantonly or maliciously, is a libel, and ought to be punished as such.

It is contended by the counsel for the plaintiff in error, that the charge is so vague and uncertain, that it cannot be intended that it was designed to apply to any person, and, therefore, cannot be made certain by an *innuendo*. The office of the *innuendo* is to explain the allusion to the party intended to be libelled; and if the allusion cannot be rendered certain without reference to the other matter, such extrinsic matter must be placed on the record, by reference to which the words complained of become actionable. The office of the *innuendo* is to explain; it does not introduce new matter. [King v. Horne, 2 Cowp. 684; Holt v. Scholefield, 6 Term, 691.]

Without considering the first count, about which there might possibly be some doubt, the second count charges the libel thus: "To the public, and more especially the ladies—know, as it is well known, that Mrs. Hoss (meaning the plaintiff Sarah) is getting along in the world," &c. &c. It cannot be questioned that the *innuendo* here is appropriate; it does not aver or introduce any new fact, but explains the allusion—that by Mrs. Hoss, the defendant meant Sarah Hoss. In a subsequent part of the same publication, it is stated, that "she, (meaning the plaintiff Sarah,) I am told, visits Mrs. Burnett, alias Haden, decent company for decent folks; if, but as some folks say, they suit very well. I think such ladies ought to establish a whore house: they (meaning said Sarah and Mrs. Burnett) would make good street whores," &c. &c. Here again the averment, that by the terms *"she"* and *"they"* were meant the plaintiff Sarah, and the plaintiff and Mrs. Burnett, the *innuendo* is performing its appropriate function, the explanation of the terms employed, and which require for their explanation the aid of no other fact. The *innuendo* here merely explains the use of the personal pronouns she, and they; and whether the explanation thus given is correct or not,

is to be ascertained by the context. In this case, it is clear that Mrs. Hoss is the person referred to by the personal pronoun "she."

In a succeeding part of the libel, the term, "filly horse," is alleged to mean the plaintiff Sarah, and we do not doubt the *innuendo* is proper. It is a play upon the plaintiff's name, *Hoss*, which any one knowing the plaintiff and reading the libel would at once understand; and is in principle like the case of a libel by signs, or by painting, so significant that though the name of the injured person is not used, every one at once understands who is intended to be caricatured, or ridiculed. Without, therefore, considering the first count, as the second is certainly sufficient, and the demurrer was general to both counts, it was properly overruled.

It was not necessary to set out the entire publication, but it was sufficient to set out such parts as the plaintiff complained of as libellous; if the plaintiff does not, by omitting some portions, produce a new arrangement, and thereby alter the sense. [Tabart v. Tipper, 1 Campbell, 351.] The proper mode is to show that the selected parts are extracts, and if the omitted parts explain, or render innocuous, the parts selected, the defendant may have the advantage of it on the general issue. Such was the mode adopted in this case in strict conformity with the precedents.—[Metcalfe v. Williams, 3 Litt. 389; Buckingham v. Murray, 2 Carr. & Payne, 46; Starkie on Slan. 268.]

We proceed to the consideration of the bill of exceptions.— The original libel having been proved to be lost, the plaintiff produced three copies, each of which was proved to be a substantial copy of the original libel, and all of which differed from each other in some respects. To the introduction of each of the copies, the defendant objected; but the objection was overruled, and all were permitted to be read to the jury. The objection now urged is, that this was proving, not the libel as laid in the declaration, but equivalent slanderous words, which this court held, in Williams and Wife v. Bryant and Wife, [4 Ala. 44,] was not sufficient.

The question before the court was, whether the copies were correct copies of the original. To be so, they must have corresponded with it in all respects. It is a fair presumption, that there was a difference between the copies and the original, but in what

that difference consisted, we have not the means of determining, as the copies are not set out in the record, nor is it stated in what the difference consisted. It may be that words of equivalent import were substituted in the copies for the language of the original; or it may be that the difference consisted in false spelling, or in the collocation of a sentence, which did not alter the meaning. If the former, the copies should have been rejected; if the latter, the variance would have been immaterial. It is the duty of the party complaining of an error to show it on the record affirmatively; and as all reasonable presumptions are to be made in support of the judgment of the court, we must assume that the variance was immaterial. The plaintiff did not undertake to set out the libel in *haec verba,* or according to its tenor; but that the defendant published a libel of and concerning the plaintiff, "containing, *among other things,* the false, scandalous and libellous matter following, to wit." The rule in such cases is, that the omission or alteration of a letter, which does not render it a word of different signification, will not be a fatal variance. [Calhoun v. McMeens, 1 Nott & McCord, 422; Metcalfe v. Williams, 3 Littell, 387. See the authorities collected by Mr. Starkie, 2 Vol. Ev. 858.]

That the court left it to the jury to say whether the copies were correct transcripts of the original, was an error of which the plaintiff in error cannot complain, as the court had previously decided that they were admissible in evidence, and thereby affirmed their correctness. The permission afterwards given to the jury to pass on that question, was for the benefit of the defendant, and he cannot, therefore, complain of it.

Finally; the court charged, that if the defendant either composed or published the libel, the jury must find for the plaintiff. This is a plain error. To constitute either verbal or written slander, there must be a publication—the contents must be made known to some third person or persons. This is not denied by the counsel for the defendant in error, who insist that the point was not made in the court below, that publication was conceded, as is evident from the fact that there were so many copies of the libel extant. It is, to be sure, very probable that such was the fact; but still it may be that the libel was not intended for publication, and that the copies were taken without the consent of the defendant. There is nothing in the record which conclusively

shows that publication was made; and as the charge was clearly erroneous in point of law, and upon a point necessarily involved in the issue, it is impossible that we should say that the defendant was not prejudiced by it. It may have been the point on which the case turned; and for this error, the judgment must be reversed, and the cause remanded.