# *Ex parte* Nelson & Kelly.

## *Mandamus.*

1. *Bill of exception; when and where may be signed.*—Under the practice in this State, with the sanction of this court, prior to the act of 1844, it was common to sign and seal bills of exceptions, when exception was duly taken on the trial, either during or after the term, and often in another county than that in which the court was held. The statute of 1844, and subsequent amendments (Code, § 3133), changed this practice in one respect only—as to the time in which bills may be signed.

2. *Same; who must sign.*—The judge who presides on the trial is alone authorized to sign and seal a bill of exceptions in the cause ; and where the judge of one circuit opens court in another circuit and tries causes during part of the term, he may, after ceasing to hold the court, sign and seal bills of exceptions in such causes, in a county and circuit other than that in which the court was held, if he does so during the term, though the judge of the circuit is then presiding in that court and continues to do so for the remainder of the term.

This was a motion for a *mandamus,* or other remedial writ, to compel the Hon. John Henderson, Judge of the 10th Judicial District, to strike from the files of the Circuit Court of Talladega county, a certain bill of exceptions filed in said court, in the case of E. B. Nelson and S. C. Kelly against A. J. Street, which said bill was signed by William L. Whitlock as the judge presiding at the trial of the case, which occurred at the Spring term, 1879, of the Circuit Court of Talladega. The following are the facts in relation to the signing of said bill of exceptions. Judge Whitlock opened court on the 21st day of April, 1879, and held said court continuously until the 25th day of that month, and that on Saturday, the 26th day of April, Hon. John Henderson presided and held said court until the close of the term. While Judge Whitlock was presiding in the said circuit, he tried the case of Nelson and Kelly against A. J. Street and rendered a judgment for $3,219.00 in their favor on the verdict of the jury, and overruled a motion by Street for a new trial. On the 17th day of May, 1879, and before the adjournment of the term of the court at which the cause was tried, Judge Whitlock, at Gadsden, in Etowah county, Alabama, which county is in the 12th Judicial Circuit, signed a bill of exceptions and delivered the same to F. W. Bowdon, one of the counsel for Street, who delivered it to the clerk of the Circuit Court of Talladega county to be filed among the papers in the

VOL. LXII.

cause, on the 19th day of May, 1879, and it was marked filed by the clerk on that day.

The petitioners moved the court below, Hon. John Henderson presiding, to strike the bill from the files, on the ground that it was signed by Wm. L. Whitlock, in Gadsden, in Etowah county, Ala., and that he had no power, jurisdiction, or authority to sign the same, while in Gadsden, without the written consent of plaintiffs or the attorneys of record, which was shown not to have been given. The court below refused the motion, and application is here made to compel the court to grant it, and strike said bill of exceptions from the files.

J. T. HEFLIN and L. E. PARSONS, for the motion.—A bill of exceptions must be tendered by the party supposing himself aggrieved, stating the point, charge, opinion or decision, with such a statement of the facts as is necessary to make it intelligible, and if correctly stated, it is the duty of the *presiding judge* to sign the same, which thereby becomes a part of the record.—Code of 1876, § 3108. Without the signature of the presiding judge the bill does not become a part of the record, even though it is correctly stated and counsel consent that it may be treated and regarded as a bill in the Supreme Court.—54 Ala. 178; 17 Ala. 700; 52 Ala. 7; Ib. 112; 28 Ala. 158; 34 Ala. 149. It is the signature of the *presiding judge*, not of the judge who *presided*, that makes the bill of exceptions a part of the record. It is the act of the court, not of the judge as distinguished from the court. Judge Whitlock, as judge of the 12th Judicial Circuit, has no power or authority over the records of the Circuit Court of Talladega. While he held court his power and authority as presiding judge enabled him to make and unmake the records of that court as to him seemed right.—7 Ala. 201. But that power and authority ceased when he absented himself, and Judge Henderson became the presiding judge of that court, and acted as such until the close of its session.—54 Ala. 61; 5 Ala. 9; 6 Ala. 881.

BOWDON & KNOX, *contra.*—*Mandamus* will not lie to revise the action of a lower court, though it will to compel it to take action. When the judge has acted it can not be revised by such a writ.—See 56 Ala. 596; 49 Ala. 360; 39 Ala. 698; 26 Ala. 133. A motion to strike from the files a bill of exceptions must be based on irregularities apparent on the face of the record. What is stated in the record must be taken as true, until the defect is remedied by amendment. In the present case it is not pretended that there is any

defect apparent in the record, and no evidence *de hors* the records can be received to show an irregularity.—50 Ala. 23; 17 Ala. 143; 24 Ala. 329; 29 Ala. 82. There is no statute which designates when the presiding judge shall sign a bill of exceptions. It is a full compliance with the statute, if it be signed within the time prescribed. The term, presiding judge, means the judge who presides on the trial of the case, and not the judge who happens to preside over the court at any different time. How could a judge who had not tried a case, sign a bill of exceptions, even if he did happen to be the presiding judge at some other time during the term of the court at which the trial was had? If the bill is signed by the judge who presided at the trial, while the term of the court at which the trial was had is still in session, the statute has been fully complied with and the bill becomes a part of the record of the cause.—9 Port. 441; 6 Ala. 881; 5 Ala. 237; 13 S. & R. 85; 54 Ala. 178.

STONE, J.—"Either of the parties in any civil case, during the trial of the cause, may reserve, by bill of exceptions, any charge, opinion, or decision of the court, touching the cause of action, and which would not otherwise appear of record."—Code of 1876, § 3107. "No bill of exceptions can be signed after the adjournment of the court during which the exception was taken, unless by consent or agreement of counsel in writing, except in such cases as is otherwise provided."—*Ib.* § 3113. Bills of exceptions were unknown to the common law of England. They had their origin in Statute Westm. 2— 13 Edw. 1, ch. 31. "The bill of exceptions, (under their practice,) must be tendered at the trial; for if the party then acquiesce, he waives it, and shall not resort back to his exception, after a verdict against him; when, perhaps, if he had stood upon his exception, the other party had more evidence, and need not have put the cause on that point. The statute, indeed, appoints no time; but the nature and reason of the thing require that the exception should be reduced to writing, when taken and disallowed, like a special verdict, or demurrer to evidence; not that it need be drawn up in form, but the substance must be reduced to writing while the thing is transacting, because it is to become a record. * * * When the bill of exceptions is sealed, the truth of the facts contained in it can not afterwards be disputed."—Tidd's Pr. 863–4; 2 Bouv. Bacon's Abv. 112. In the early days of our judicial history, a practice grew up of noting or remembering the exception when taken, and of writing it out, giving it form and body, and having it sealed by the presiding judge, afterwards; sometimes days,

weeks, or months afterwards. Often this was done at another court, or in another county. Objection was raised to this practice in the case of *Strader, Perrin & Co. v. Alexander*, 9 Por. 441, but it was overruled. This court said, "If the exception be taken at the trial, it may be noted by the judge, and the bill sealed at any time, either during the term or afterwards." In the case of *Pool v. Cahaba & Marion Railroad Company*, 5 Ala. 237, the bill of exceptions was sealed six months after the adjournment of the court at which the trial was had. In the opinion of this court, after copying what we have copied above, it is added that, "The object of taking a note, is merely that a recollection of the point may be retained, and not indispensable to the legality of the bill. If, therefore, the judge remembers it with sufficient distinctness to enable him to certify it as it arose at the trial, he can perfect the bill of exceptions after court." The case of *Weir v. Hoss*, 6 Ala. 881, was a very strong one. The bill of exceptions was sealed twelve months after the trial, and long after the appeal had been taken to this court. A motion was made in this court to suppress the bill of exceptions. The motion was overruled. Soon after this case was decided, and probably influenced by it, the act of December 20, 1844, was passed, by which judges were prohibited from giving or signing bills of exceptions after the adjournment of the term at which the exception was taken, with a *proviso* that, "by the consent of counsel, reduced to writing, a longer time may be allowed, not to extend beyond ten days from the adjournment of said court."—Pamph. Acts, 5; Code of 1852, § 2358; Revised Code, § 2760. We know judicially that at the end of ten days after the adjournment of most of the circuit courts, the presiding judge will be holding court in another county. We know, too, that in practice, under the written consent of counsel, given under the act of 1844, bills of exceptions were frequently signed in a county other than that in which the trial was had. Yet, we are not aware that any motion has ever before been made to suppress a bill of exceptions, because it was granted and signed out of the county in which the trial took place. Under the act of 1844, it was uniformly ruled in this court, that unless the record affirmed the signing of the bill of exceptions within the time prescribed by that statute, it would not be regarded as a part of the record.—1 Brick. Dig. 245, §§ 43, 44, 45, 46, 47, 50. Thus the law stood until February 14, 1870, when it was so changed as to read as now found in section 3113 of the Code of 1876, copied above.

Bills of exceptions, when signed by the presiding judge within the time prescribed by law, become a part of the

record of this court when the case is brought here by appeal. Like all other records, they import absolute verity, and can not be altered after their execution, by the judge who presided on the trial, or by proof in this court showing errors committed therein. The case of *Weir v. Hoss* was a severe application of this principle. In the opinion of the court it is said, "A number of affidavits, and a letter from the presiding judge to one of the counsel, have been produced, and a motion made to suppress the bill of exceptions. The affidavits certainly tend to establish, that the bill of exceptions does not correctly state the points reserved on the trial, or, at least, to render it a matter of doubt, which is strengthened by the letter of the judge, admitting that he did not remember the facts very distinctly, and that he relied upon the statements of the defendant's counsel; but we are clear in the opinion that this is not sufficient to authorize the suppression of the bill of exceptions. We can not try the facts, and determine what was reserved at the trial. That can only be ascertained by the court before which the point was reserved. In this case the judge has certified the bill of exceptions; it is a part of the record, and can no more be impugned by extrinsic proof than any other part of the record." The same principle had been declared in *Br. Bank v. Kinsey*, 5 Ala. 9, and was solemnly reaffirmed in *Chapman v. Holding*, 54 Ala. 61. See, also, *Hollingsworth v. Chapman*, 50 Ala. 23.

Under our system it frequently happens, and without fault or cause of complaint, that one circuit judge holds a part of a term, and another completes it. And under our Constitution, as now framed, Art. 6, § 18, some person other than the judge, "practicing in the court, and learned in the law," may be agreed on or appointed to preside in the trial of a cause in which the presiding judge is incompetent to sit. In such case, the commissioned judge holding the court, temporarily vacates the seat, while the special judge hears, decides and renders judgment in the particular cause. That case disposed of, the special judge leaves the bench and the presiding judge proper resumes the seat, and continues with the business of the court. It might happen, and no doubt does, that in courts having heavy dockets, more than one, nay, several special judges, will be agreed on by the several litigants, to hear and decide the different causes in which the judge, by reason of relationship, interest, or prior connection as counsel, is incompetent to preside. In such cases it would work injurious delay, if not an intolerable grievance, if each successive judge were required to remain the occupant of the bench, and thus suspend all other business until

exceptions reserved could be reduced to writing as a formal bill of exceptions, disputed questions settled, and the bill signed, every time the incumbency of the bench might undergo a change. In the case of *Gordon v. Ryan*, 1 J. J. Marshall, 55, a motion was made to suppress the bill of exceptions, because it was not signed until twelve months after the trial. The Supreme Court of Kentucky said: "It is urged in this case that the bill of exceptions containing the evidence should be altogether disregarded, because it was not signed, sealed and made part of the record at the term the judgment was rendered. After the jury found their verdict, the court took until the next term to consider of the judgment; and at the term judgment was rendered, the court gave the defendant leave until the next term thereafter to file exceptions. It is argued that exceptions so filed are void, and should not be regarded. This we do not concede. It is the duty of the court below to allow the party exceptions as matter of right; and if time should be given, from term to term, to prepare them, and that be erroneous, it would be making the errors of the court close the door against all redress to the injured party. It may often happen, and sometimes does, that important causes are not decided until the last hour of the term, by the jury. In such cases, from necessity, the court must often take time to consider until the next term, and also give time to prepare exceptions. These things must be left to the sound discretion of the inferior courts. The points put down in the exceptions must be made and reserved in the progress of the cause, and if not, the party may waive the objection; but when the points are so made and reserved, they may be reduced to writing and placed in the record thereafter, at the discretion of the court." In the case of *Stewart v. Huntingdon Bank*, 11 Serg. & Rawls, 267, in the opinion by Tilghman, C. J., is the following language: " The court was requested by the counsel for the defendants, to suspend the trial until the bills of exceptions were drawn up in form and sealed by one of the judges. This the court refused, on account of the delay it would occasion, but a note of the exception was taken, to be afterwards reduced to form. I do not know that the conduct of the court, in a case of the kind, is the subject of a bill of exceptions. There can be no impropriety, however, as the case is before us, in giving our sentiments on it. The counsel who takes an exception, has a right to have it fixed immediately. A note in writing is sufficient; and such a note should never be omitted. We have frequently experienced great inconvenience from the want of it. In the present instance, however, the court did immediately reduce the

substance of the exception to writing, so that there was no cause for complaint." In the case of *Sikes v. Ransom*, 6 J. R. 281, there is a collection of English authorities on this question. In the opinion, probably by Kent, then Ch. J., and afterwards Chancellor, is the following language: "Regularly, a bill of exceptions ought to be tendered at the trial, though the practice is to allow the counsel to tender it afterwards." The following cases shed light on this question, and may be consulted with profit. It will be seen that the rule is not the same in the different States, influenced, no doubt, by their varying statutes: *Ex parte Martha Bradstreet*, 4 Pet. 102; *Walton v. U. States*, 9 Wheat. 641–657; *Morris v. Buckley*, 8 Serg. & Rawls, 211; *Coburn v. Murray*, 2 Greenl. 336; *Law v. Merrills*, 6 Wend. 268; *Churson v. Kruper*, Breese, 162; *Shipard v. White*, 3 Cow. 32; *Midberry v. Collins*, 9 J. R. 345; *Clark v. Dutcher*, 19 J. R. 246; *People ex rel. v. Herkimer Co.*, 7 Wend. 536; *State v. Lard*, 5 N. H. 335; *Bratton v. Mitchell*, 5 Watts, 69; *U. S. v. Gibert*, 2 Summ. 19; *Pool v. Lessees of Fluger*, 11 Pet. 185; *Seale v. Chambliss*, 35 Ala. 19.

We think we may safely affirm that prior to the statute of 1844, a practice had grown up in this State of granting and executing bills of exceptions, either during the term, or after the adjournment of the court at which the cause was tried, and either in the county in which the trial was held or out of it. And bills of exceptions so signed and sealed were never rejected or suppressed on that account. We think, too, that this practice, although liable to abuse in negligent or dilatory administrations, is sanctioned alike by authority and reason. The jurisdiction of the circuit judges is coextensive with the State. They have the same official authority and power in one county as in another. Signing a bill of exceptions does not require the machinery of a court. It is the act of the judge, and it would seem that his sense of duty and his official restraints, ought to be and are as binding in one part of the State as in another. The act of 1844, followed up by the sections of the different Codes, referred to above, has wrought one, and only one, change in this practice; that of *the time* within which the bill may be signed. So far as we are informed, this was the only abuse the legislature proposed to remedy. They said nothing about place. Only the judge who presided at the trial could know what exceptions were reserved, and he alone could certify them. Another judge, although presiding during a part of the same term, could have no knowledge, and therefore could have no jurisdiction in the premises. "No bill of exceptions can be signed after the adjournment of the court during

which the exception was taken," &c. This bill was signed before the term of the court adjourned—was signed by the judge who presided on the trial, and therefore it was signed within time.—*Seale v. Chambliss*, 35 Ala. 19.

Writ of *mandamus* denied.