# Gunter & Gunter *v.* Pollak.

*Assumpsit.*

(Decided Dec. 8, 1910.  53 South. 1002.)

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by Gunter & Gunter against Ignatius Pollak, From a judgment for defendant, plaintiffs appeal. Application to establish a bill of exceptions denied.

In this case appellants moved to strike the bill of exceptions from the record, which was granted; and they then sought to establish a proper bill of exceptions, which motion was denied by the court. Judge McClellan, desiring to express his views on the matter, no opinion denying the motion having been written, sets down his reasons for concurring with the court in their action declining to establish the bill of exceptions.

W. A. GUNTER, for appellants.

BROWN & KYLE, for appellee.

PER CURIAM.—Motion to establish bill of exceptions overruled.

McCLELLAN, J. (concurring).—These undisputed facts, taken from the record and from the testimony of

movants (appellants), present the status upon which this court rules as above stated:

The verdict was rendered on September 24, 1909. On November 23, 1909, appellants presented to the presiding judge their proposed bill of exceptions. After altering this proposed bill, the presiding judge affixed his signature to it on February 19, 1909. One of the alterations consisted in this, as presented in the bill recited: "The foregoing was all the evidence in the case"; but the presiding judge, after presentation and before signing, substituted for the word *all* the words "the tendency of," making the recital read, "The foregoing was the tendency of the evidence in this case." On April 29, 1910, appellants' motion in this court to strike the bill signed by the judge and copied in the transcript was, as of course and without contest by appellee, granted. Appellants then moved to establish a bill of exceptions, which motion invoked the ruling of the court before set forth. It will be readily seen from these uncontroverted facts that the bill of exceptions copied in the transcript was signed by the presiding judge within the time prescribed by law.—Code 1907, § 3019.

The only authority for the *establishment* of a bill of exceptions exists in Code 1907, §§ 3021, 3022. By these provisions thereof the power and authority to establish bills of exceptions are *alone* comitted to and reposed in this court. Under the very terms—conditions—of these statutes, it is clear to the writer that there can be no establishment of a bill here if the presiding judge has, within the period provided by law, signed *a bill of exceptions*. It is not provided anywhere in our statutory system that the presiding judge *must* refuse to sign the proposed bill of exceptions, presented by the exceptant, if he (presiding judge) conceives it to be, or it is, in fact, untrue. That he may so refuse or fail to sign a

[Gunter & Gunter v. Pollak.]

bill which is not true, and refrain from correcting it so as to make it true, is of coures not doubted.

It will be observed that Code, § 3021, conditions the establishment of bills of exceptions, not upon the failure or refusal to sign the bill *presented by exceptant,* but upon the failure or refusal of the presiding judge to sign *a bill of exceptions.* So it results that, if the express terms of the statutes are correctly understood by not be granted because the presiding judge signed a bill of exceptions, it being the bill presented by exceptants and *changed* by the presiding judge to conform to his views of what took place on the trial. When reference is had to adjudications pertinent to this subject there can be, it seems to the writer, no possible doubt that the above-stated construction of the cited statutes is sound. Bills of exceptions had their origin in the Statute of Westm. 2-13 Edw. 1 Ch. See *Ex parte Nelson & Kelly,* 62 Ala. 376. Under the English statute it was steadily ruled that a bill of exceptions when *sealed* could not be subject of dispute in respect of the truth of the facts contained in it.—2 Tidd's Proc. p. 864; 2 Bacon's Abr. (Bouvier Ed.) p. 113. In this state it has long been firmly settled that a bill of exceptions, signed in due time, becomes a part of the *record* of this court, and its contents import absolute verity.—*Branch Bank v. Kinsey,* 5 Ala. 9; *Weir v. Hoss,* 6 Ala. 881; *Pool v. Cahawba Co.,* 5 Ala. 237; *Chapman v. Holding,* 54 Ala. 61; *L. & N. R. R. Co. v. Malone,* 116 Ala. 600, 603, 22 South. 897; *Pearce v. Clements,* 73 Ala. 256; *Ex parte Nelson & Kelly,* 62 Ala. 376. In the last-cited decision it was said: "Bills of exceptions, when signed by the presiding judge within the time prescribed by law, become a part of the record of this court when the case is brought here by appeal. Like all other records, they import absolute verity, and cannot be al-

tered after their execution by the judge who presided on the trial, or by proof in this court showing errors committed therein." Three of a number of other decisions to like effect were referred to and followed in the opinion quoted. The same principle was declared in the more recent ruling in *L. & N. R. R. Co. v. Malone*, 116 Ala. 600, 22 South. 897.

If a bill, in a given case, is signed by the presiding judge within the time prescribed by law, and if, as is certain, a bill so signed becomes a part of the record of this court and cannot be altered anywhere at anytime, the writer cannot see how such a *record* can be altered by striking a part thereof, and then, by motion to establish, substitute for 'that stricken another *record*, in whole or in part. Where the law forbids a direct process that process cannot be pursued by *indirection*. The fact that an appellant may, in this court, strike his bill of exceptions as of course (where there are no cross-assignments of error), and so upon the theory that he may waive or abandon his right to have reviewed in this court rulings prejudicial to him on the trial, is not a factor in the inquiry in hand. The question has to do with the *record as constituted* and is not controlled by the elective right of an appellant to waive or abandon errors intervening, to his prejudice, below. If the process and purpose shown in the procedure taken in this case could be pursued, it is evident that bills of exceptions, though a part of the record here, would be the subject of alteration by merely striking the one seasonably signed by the presiding judge and establishing a different bill which, when established, would take the place of that one stricken. And such a process would, as readily appears, transfer to this tribunal the ascertainment of what took place on the trial. Speaking to this phase of the question under consideration,

it was said in *Ex parte Nelson v. Kelly*, 62 Ala. 380, in an approving quotation from *Weir v. Hoss*, 6 Ala. 881: "We cannot try the facts, and determine what was reserved at the trial. That can only be ascertained by the court before which the point was reserved. In this case the judge had certified the bill of exceptions. It is a part of the record, and can no more be impugned by extrinsic proof than any other part of the record."

From the fact that when the presiding judge seasonably signs (*seals,* they said in the early English jurisprudence) or *certifies* a bill of exceptions, it then becomes a part of the record of this court, the act of the presiding judge in *settling* the bill—determining what *in fact* transpired on the trial—is a *judicial* act; an act by one constituted by law to decide the facts, as was said in the above quotation from *Ex parte Nelson & Kelly,* 62 Ala. 380.—*Emerson v. Clark,* 2 Scam. (Ill.) 489. In the early decision of *Etheridge v. Hall,* 7 Port. 47, 53, it was expressly recognized that the law "has constituted" the presiding judge "the judge of the correctness of the facts stated in a bill of exceptions." When that jurisdiction is invoked by an exceptant and is exercised by the settlement of the bill by the presiding judge, and is seasonably signed, "certified," *sealed,* it is a *record,* importing absolute verity. To appropriate, in this connection, the quaint language quoted by Stone, J., in *Chapman v. Holding,* when dealing with bills of exceptions (54 Ala. 62) : "One man may affirm a thing, and another may deny it; but if a *record* once say the word, no man shall be received to aver or speak against it."—3 Burn's Justice, 3.

The writer cannot view the suggestions that such a rule commits to the presiding judge the dangerous power, without reservation and without right of revision, to fix the contents of a bill of exceptions, as more than an

argument ad hominem. It would doubtless suffice to say, in response to the argument, that it has been always so in this state, following the English notion, and that the power has not been so prostituted (if at all) as to require its abrogation. The writer does not anticipate or believe that such will ever be the case. If a presiding judge should thereafter appear who would willfully color the bill so as to defeat a fair, just revision of his acts and rulings at nisi prius, orderly processes for his removal from office are afforded. The power and duty to *settle* bills of exceptions must be reposed somewhere. Obviously, the officer who presides at the trial is the best repository of that power. He witnesses the proceedings throughout. To him has the law committed the performance of the duty indicated. To this court it has not been committed save in the one case where the presiding judge has not signed, thereby *settling,* "a bill of exceptions."—Code 1907, §§ 3021, 3022. If he has seasonably signed, and thereby *settled,* "a bill of exceptions," it is a *record,* and no power exists to denude the *sealed* bill of its quality as a *record.* It may be abandoned, stricken by an exceptant (appellant —where there is no cross-assignments of error), but this act of the exceptant does not destroy the document as a *record;* for once a *record,* it cannot be divested of its quality as such, though an exceptant (appellant) may waive or abandon his right to have reviewed the rulings below shown by that *record.*

Is the alteration of a bill seasonably presented to the presiding judge by the exceptant (appellant) and the signing of it a failure or refusal "to sign a bill of exceptions," within our statutes (Code, §§ 3021 3022) providing for the establishment of bills of exceptions? It has been suggested that such is the effect of signing a bill materially different from that presented. The nec-

[Gunter & Gunter v. Pollak.]

essary premise for this conclusion is that the presiding judge fails or refuses to sign "a bill of exceptions" under the statutes cited, if he does not sign the proposed bill presented to the judge by the exceptant (appellant). If this premise be sound, the consequence must be that if the presiding judge materially alter the bill *as presented*, and then seasonably sign the presented bill as so altered by him, he has *not* signed "a bill of exceptions"; he has failed or refused to sign "a bill of exceptions," unless the exceptant agrees to, or acquiesces in, or ratifies, the alterations so made by the presiding judge.

If the pertinent statutes provided that bills of exceptions might be established "if the judge fail or refuse to sign" *the proposed bill, presented by the exceptant,* instead of, as it does provide, "if the judge fail or refuse to sign *a bill of exceptions,"* then, of course, the judge would be without other authority than to sign the proposed bill, presented to him, without material alteration, or to fail or refuse to sign it, unless the exceptant would agree to, acquiesce in or ratify the alterations proposed or made by the presiding judge. In other words, so far as the judge's power or authority, without the aid of exceptant's acceptance or ratification of alterations, would extend under that view of the statute, the judge would be without right to sign a bill materially different from that presented and his signature of one so different would be vain,—would not operate to constitute that which he did sign a part of the record. In short, a signature—certification— under those circumstances (that is, in connection with the absence of acceptance or ratification of alterations by the exceptant) would not be the signing of a bill of exceptions, and in consequence that statutory condition to the establishment of a bill would be present. As be-

fore stated, the writer cannot consent to such a view—to such an interpretation of our pertinent statutes. The failure or refusal made a condition, by the statute, to the establishment of a bill, is the failure or refusal to sign "a bill of exceptions," not a failure or refusal to sign *the* proposed bill, presented by the exceptant.

If the suggested construction of the statute be accepted, it is obvious that the presiding judge, unaided by the acceptant's consent or ratification, has no power or authority—jurisdiction—to *settle* a bill of exceptions—that is, he *alone* cannot finally decide what took place on the trial; but, on the contrary, he *must,* unless the exceptant in some way consents to or ratifies a different recital of what took place on the trial, from the recital made in the proposed, presented bill, determine his signature vel non upon the bill *as presented.* It necessarily follows that, so far as the jurisdiction of the presiding judge himself alone is concerned, such a restricted application of the statute would take from him all right to *settle* a bill. His sole, unsupplemented (by exceptant) power would be to decide whether the proposed bill, *as presented,* was a correct recital of the happenings and acts of the trial, incident to or involving the matters sought to be brought up for review. I cannot reconcile this restriction—this practical abolishing—of the power of the presiding judge to *settle,* without the aid of exceptant, bills of exceptions, with what appear to me as the plain terms of the statutes, nor with the clear announcement before quoted from *Ex parte Nelson & Kelly,* 62 Ala. 380, nor with the origin, statutory development, and judicial exposition of, and the practice under, the system of review, on appeal, through the means of bills of exceptions.

Under such a restriction of the power and authority of the presiding judge to *settle,* and thereupon to sign

[Gunter & Gunter v. Pollak.]

bills of exceptions, it is readily to be seen that in every instance where the exceptant was unwilling or did not accede in some way to alterations of his proposed, presented bill by the presiding judge, the issue of what in fact, took place on the trial would be triable alone in this court. And in the proportion the power of this court was so expanded, in that same proportion would· the power and authority of the presiding judge be reduced, until, in respect to the matter in hand, the presiding judge, under the sanction and obligation of his high office, could only conform the proposed bill, by alteration, to meet his official impartial view of what took place on the trial when the exceptant had agreed to, acquiesced in or ratified, the alteration the presiding judge proposed or had made. If this be true, then *when* "a bill of exceptions becomes a part of the record of this court," will and must, upon occasion, depend upon *when* the exceptant acquiesces in or ratifies the (unauthorized) act of the judge in altering the bill as presented and then signing it. We would have then, this, at least, unique status: The result of the act (in altering the proposed bill presented and then signing it) of the presiding judge would become "a part of the record of this court" upon the condition the exceptant consented to, acquiesced in or ratified the alterations of the presented bill to be made or that were made by the presiding judge. In short, the *record* of this court, in this respect, would finally depend, not on the act of the presiding judge, but upon the act or conduct of the exceptant (appellant). It is difficult to conceive how the character of record vel non could be made to so depend.

For the reasons indicated, I concur in the overruling of the motion to establish the bill of exceptions.

Of course, if the presiding judge fails or refuses to sign "a bill of exceptions," and the motion is to establish, a very different matter is presented for the court's consideration.